UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NOSHAD ALAM QURESHI,

                              Petitioner,

    vs.                                          9:26-CV-1439
                                                 (MAD)

PHILIP RHONEY, DAVID VENTURELLA,
MARKWAYNE MULLIN, and TODD BLANCHE,

                              Respondents.

---

APPEARANCES:                          OF COUNSEL:

BOROWSKI WITMER                       MATTHEW BOROWSKI, ESQ.
IMMIGRATION LAWYERS
4343 Union Road
Buffalo, New York 14225
Attorney for Petitioners

OFFICE OF THE UNITED                  ALEXIS M. OSBORNE, AUSA
STATES ATTORNEY
445 Broadway, Room 218
Albany, New York 12207
Attorney for Respondents

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

## I.  INTRODUCTION

On July 26, 2026, Petitioner Noshad Alam Qureshi filed a petition for habeas corpus

seeking relief from his detention by the Department of Homeland Security's ("DHS") Immigration

and Customs Enforcement Office ("ICE").  *See* Dkt. No. 1.  Petitioner names the following

individuals as Respondents: Philip Rhoney as Acting Field Office Director of the ICE Buffalo

1

Field Office; David Venturella as ICE's Acting Director; Markwayne Mullin, DHS Secretary; and Todd Blanche, Attorney General of the U.S. Department of Justice. *See id.*

Petitioner has been detained by ICE since July 26, 2026, and requests immediate release. *See id.* Respondents oppose the Petition. *See* Dkt. No. 7. For the following reasons, the Petition is granted.

## II. BACKGROUND

Petitioner is a native and citizen of Pakistan. *See* Dkt. No. 7-2 at 1.[1] He encountered Border Patrol at the United States/Mexico border on January 15, 2023. *See* Dkt. No. 7-1 at 2; Dkt. No. 7-2 at 2. Petitioner was interviewed by immigration officials, had no criminal history, and did not state a fear of returning to Pakistan. *See id.* at 2-3. DHS determined that Petitioner did "not appear to be a threat to national security, or public safety, and was referred to ICE/[Enforcement and Removal Operations ("ERO")] for enrollment in the Alternative to [D]etention program [("ATD")]." *Id.* at 3.

Petitioner's Record of Deportable/Inadmissible Alien states that "[o]n June 29, 2024, DHS filed I-765 – Application for Employment Authorization and Approved for [Petitioner]; DHS issued a card on June 29, 2024[,] for [Petitioner]." Dkt. No. 7-1 at 2. On August 5, 2024, Petitioner was given a notice to appear in immigration court on August 6, 2024, in Hartford, Connecticut. *See* Dkt. No. 7-3 at 1. On June 24, 2026, an immigration judge denied Petitioner's applications for asylum and withholding of removal and ordered him to be removed. *See* Dkt. No. 7-4. Petitioner was not detained at that time and filed an appeal. *See* Dkt. No. 7-5. That appeal remains pending.

---

[1] Citations are to the pagination generated by the Court's electronic filing system, CM/ECF, in the header of each page.

Then, "[o]n July 26, 2026, ICE Alternative to Detention Officers were conducting mandatory ATD check-ins at the ALB ICE ERO suboffice.  [Petitioner] reported to the ALB suboffice pursuant to ATD demand and was subsequently taken into custody."  Dkt. No. 7-1 at 2. DHS stated in its record of the arrest that "[i]n response to the President's declaration of a national emergency related to illegal immigration, . . . ICE ERO[] conducted operation Empire Strikes Back at the ALB ICE ERO suboffice."  *Id.*  A Warrant for Arrest of Alien dated July 27, 2026, was served on Petitioner on July 27, 2026.  *See* Dkt. No. 7-6.

### III. DISCUSSION

**A.     Legal Standard**

A district court may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Veletanga v. Noem*, No. 25-CV-9211, 2025 WL 3751865, *2 (S.D.N.Y. Dec. 26, 2025) (quoting *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4)); *see* 28 U.S.C. § 2241(c)(3).  "This jurisdiction includes habeas petitions filed by immigration detainees[,]" *Padilla Molina v. DeLeon*, No. 25-CV-6526, 2025 WL 3718728, *2 (E.D.N.Y. Dec. 23, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)), including non-citizens, *see R.P.L. v. Maldonado*, 814 F. Supp. 3d 301, 304 (E.D.N.Y. 2025).

"'[T]he petitioner "bears the burden of proving that he is being held contrary to law[,] and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."'"  *Veletanga*, 2025 WL 3751865, at *2 (quoting *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, *3 (S.D.N.Y. May 26, 2020)); *see Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

**B.     Statutory Authority for Petitioner's Detention**

The parties dispute the statutory authority that controls Petitioner's arrest and detention. Petitioner argues that 8 U.S.C. § 1226 applies. *See* Dkt. No. 1. That provision states, in relevant part, that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). "[D]etention under § 1226(a) is discretionary." *Gaspar v. Akshar*, No. 9:26-CV-118, 2026 WL 699369, *4 (N.D.N.Y. Feb. 17, 2026) (citing *Tumba v. Francis*, 813 F. Supp. 3d 394, 399 (S.D.N.Y. 2025)); *see Barbosa da Cunha v. Freden*, 175 F.4th 61, 72 (2d Cir. 2026). Section 1226 "allows a noncitizen to 'request a bond hearing before an immigration judge.'" *Hassan v. Bondi*, No. 9:26-CV-319, 2026 WL 891602, *2 (N.D.N.Y. Apr. 1, 2026) (quoting *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400 (E.D.N.Y. 2025)).

Respondents argue that 8 U.S.C. § 1225(b) applies. *See* Dkt. No. 7-3. That provision states, in relevant part as follows: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Under § 1225(b), detention is mandatory. *See Hassan*, 2026 WL 891602, at *2 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)).[2]

The Second Circuit recently determined that § 1226 "plainly applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the country without

---

[2] Petitioner has a pending appeal of his order of removal. In some circumstances, entry of an order of removal mandates one's detention under 8 U.S.C. § 1231. *See De Moura ex rel. Ferreira v. Warden, Broome Cnty. Corr. Facility*, No. 9:26-CV-449, 2026 WL 1705979, *3-4 (N.D.N.Y. June 12, 2026). Respondents do not make this argument. *See* Dkt. No. 7. Rather, they concede that because Petitioner's appeal is pending, the removal order is not final. *See id.* at 2. Therefore, the removal order does not mandate Petitioner's detention under 8 U.S.C. § 1231. *See Colindres v. Tellez*, No. 26-CV-663, 2026 WL 509493, *2 (E.D.N.Y. Feb. 23, 2026).

inspection and admission." *Barbosa da Cunha*, 175 F.4th at 73.  On the other hand, §

1225(b)(2)(A) "applies only to a noncitizen who is both an 'applicant for admission' and who is

'seeking admission.'" *Id.* at 74.  The Second Circuit construed "applicant for admission" to mean

a "noncitizen[] who [is] present [in the United States] and [has] not been admitted." *Id.*  In

contrast, it construed "seeking admission" as referring to a noncitizen's requests for "inspection

and authorization" if he is not yet physically present in the United States but wishes to enter.  *Id.*

According to the Second Circuit, a noncitizen who is present in the United States may be an

applicant for admission but is not automatically seeking admission.  *See id.*  It held that "because

Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and

'seeking admission,'" it does not apply to petitioners in this Circuit who are already inside the

United States.  *Id.* (citation omitted).

Respondents "acknowledge[] that, in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir.

2026), the Second Circuit held that § 1225(b)(2)(A) did not authorize the petitioners' mandatory

detention under the circumstances presented and that their detention was instead governed by 8

U.S.C. § 1226(a)." Dkt. No. 7 at 2.  They also "recognize . . . that *da Cunha* likely controls where

a noncitizen was released on an [Order of Release on Recognizance] and later re-detained." *Id.*

(footnote omitted).  Respondents concede that Petitioner was released on his own recognizance

before he was detained on July 26, 2026.  *See id.* at 3.  However, Respondents "preserve[ their]

position that § 1225(b) provides the applicable detention authority." *Id.* at 2.

Respondents see the writing on the wall—that the Second Circuit does not agree detention

is mandatory for an individual who has lived in this country for years, who is known by DHS, and

who is randomly chosen to be arrested without a valid warrant on a random day of the week

through the lure of an immigration check-in appointment.  Yet, they continue to engage in such

conduct.  Courts across the Second Circuit have explained that "where a petitioner's re-arrest was *not* a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226."  *Ivonin v. Rhoney*, No. 6:25-CV-6673, 2026 WL 199283, *4 (W.D.N.Y. Jan. 26, 2026) (citing *Campbell v. Almodovar*, No. 1:25-CV-9509, 2025 WL 3538351, *6 (S.D.N.Y. Dec. 10, 2025)); *see also Hernandez Villasmil*, 2026 WL 1235068, at *6 ("Petitioner, who was released into the United States on his own recognizance under humanitarian parole in 2023 and continued to reside in the United States for one year after his parole had been terminated, cannot be said to be 'seeking admission.'  Therefore, he is not subject to mandatory detention pursuant to § 1225(b)(2)(A) and his detention falls under the discretionary provision of § 1226(a)"); *Torrez Arce v. Blanche*, No. 9:26-CV-501, 2026 WL 1430509, *1-4 (N.D.N.Y. May 21, 2026) ("The Court therefore concludes that Petitioner, who was paroled into the United States approximately two years before his arrest, was not seeking admission when he was arrested, and Section 1225(b)(2)(A) therefore does not apply").

Petitioner is not a new arrival to the United States; he has been here for over three and a half years.  Respondents have not shown that Petitioner's detainment on July 26, 2026, was a continuation of his initial border encounter.  *See* Dkt. No. 7.  As the Western District of New York has noted, a noncitizen's entitlement to remain in the country indefinitely is distinct from the opportunity to be free from custody while his immigration proceedings are ongoing.  *See Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 368 (W.D.N.Y. 2025) (citing *Campbell*, 2025 WL 3538351, at *8).  Section 1226 contemplates the latter.  *See* 8 U.S.C. § 1226(a) ("[A]n alien *may be* arrested and detained pending a decision on whether the alien is to be removed from the United States . . .") (emphasis added).  Accordingly, the Court finds that § 1226 applies in this case.

## C.    Merits of the Petition

To evaluate whether a petitioner's detention violates due process, courts analyze the following factors, known as the *Mathews* test:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Hernandez Villasmil*, 2026 WL 1235068, at *8 (quoting *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024)); *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Although Petitioner was ordered removed in June of 2026, he has exercised his right to appeal that decision, and the appeal is pending. *See* Dkt. No. 7-4; Dkt. No. 7-5. Thus, the order of removal is not yet final and does not justify Petitioner's detention. *See* 8 C.F.R. § 1241.1(a) (noting that an order of removal becomes final when, *inter alia*, the Board of Immigration Appeals dismisses an appeal); *Colindres v. Tellez*, No. 26-CV-663, 2026 WL 509493, *2-3 (E.D.N.Y. Feb. 23, 2026) (determining that the petitioner's appeal of a removal order rendered it non-final and ordering his release from custody); *cf. De Moura ex rel. Ferreira v. Warden, Broome Cnty. Corr. Facility*, No. 9:26-CV-449, 2026 WL 1705979, *3 (N.D.N.Y. June 12, 2026) (finding that the petitioner's order of removal was final, and detention became mandatory, because he did not appeal the order of removal).

Petitioner's private interest "'is the most significant liberty interest there is—the interest in being free from imprisonment.'" *Rashid v. Trump*, 807 F. Supp. 3d 349, 367 (D. Vt. 2025) (quoting *Velasco Lopez*, 978 F.3d at 851); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner has been detained for two weeks and has a pending appeal from a removal order. This

7

Court has previously noted that, "'[i]n the case of an appeal, . . . detention may stretch on indefinitely[,]' and as a result, 'the risk of an erroneous deprivation of liberty may become more egregious[.]'" *Martins*, No. 9:26-CV-95 (N.D.N.Y. Feb. 3, 2026), Dkt. No. 16, at 13 (quoting *Rashid*, 807 F. Supp. 3d at 365). The Court is cognizant of the risk that Petitioner could remain detained indefinitely as the appeal process wears on. Respondents do not discuss that risk.

There is no indication that Petitioner received a pre-detention hearing, or any kind of individualized custody determination, before his arrest. Respondents have not updated the Court within the past two weeks while the petition has been pending stating that he has since received a post-detention hearing. This Court recently recognized that "'§ 1226(a)'s implementing regulations require an individualized determination as to whether the detention of a noncitizen is appropriate after considering whether the noncitizen (1) is a "danger to property or persons" and (2) is "likely to appear for any future proceeding."'" *Parra v. Ball*, No. 9:26-CV-1162, 2026 WL 1960934, *4 (N.D.N.Y. June 30, 2026) (quoting *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025)). Respondents "have not demonstrated, or even suggested, that any individualized determination was made as to whether Petitioner posed any risk of flight or danger before he was detained." *Id.* The record shows only that ICE arrested Petitioner after he reported to the ERO suboffice in Albany, New York, because his presence was "demand[ed]" by ICE's own ATD program. Dkt. No. 7-1 at 2.

"'ICE must obtain a warrant before arresting a noncitizen unless the officer "has reason to believe that the [noncitizen] is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest."'" *Rea v. Ball*, No. 9:26-CV-1248, 2026 WL 1959270, *2 (N.D.N.Y. July 2, 2026) (quoting *Curimilma Quille v. Blanche*, No.

26-CV-2818, 2026 WL 1453889, *5 (E.D.N.Y. May 22, 2026)); *see also* 8 C.F.R. § 287.8(c)(2)(ii).

Here, the DHS paperwork indicates that Petitioner was arrested on July 26, 2026. *See* Dkt. No. 7-1 at 2. Yet, the warrant for his arrest is dated and was served on July 27, 2026. *See* Dkt. No. 7-6. Petitioner has no criminal history. He was not actively committing any crime. He has legal authorization to work in the United States. Glaringly absent from Respondents' letter is any recognition that Petitioner has legal authorization to work in the United States as of June 29, 2024. *See* Dkt. No. 7-1 at 2. Petitioner reported to an immigration office as he was told. There is no indication that he was likely to flee before the execution of a valid warrant.

Respondents have not provided any justification for arresting Petitioner without a valid warrant except for the purported § 1225 authority—an argument which this Court (and the Second Circuit) has already dispensed. The Second Circuit has stated that "it is uncontroversial that the Fourth Amendment applies to aliens and citizens alike." *Cotzojay v. Holder*, 725 F.3d 172, 181 (2d Cir. 2013). Respondents have not provided any justification for the warrantless arrest of Petitioner who has been known to DHS, is permitted to work in the United States by DHS, and has not committed any crimes since arriving in the United States three and a half years ago.

Regarding the Government's interests, "courts have recognized that 'detention in the immigration context "has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community."'" *Martins*, No. 9:26-CV-95 (N.D.N.Y. Feb. 3, 2026), Dkt. No. 16, at 14 (quoting *Rashid*, 807 F. Supp. 3d at 369; citing *Velasco Lopez*, 978 F.3d at 854). Respondents have not shown how Petitioner's detention furthers these goals. They have not argued that Petitioner poses a flight risk, and the record suggests

9

otherwise. Petitioner was released by immigration officials into the United States in 2023 on his own recognizance. *See* Dkt. No. 7-2. Even after an immigration judge ordered him to be removed in June of 2026, he was not detained. *See* Dkt. Nos. 7-4, 7-5. Likewise, the Government has not argued or provided any evidence that Petitioner has a criminal history or poses a risk to the community or national security.

Based on the foregoing, Petitioner's detention is unjustified under § 1226's discretionary framework and violative of Petitioner's constitutional rights. *See Hernandez Villasmil*, 2026 WL 1235068, at *9; *Torrez Arce*, 2026 WL 1430509, at *4-6. Because Respondents have not offered any reason for Petitioner's detention—other than a post-arrest warrant and an order of removal that is not yet final—the Court orders Petitioner's immediate release from custody. *See Hernandez Villasmil*, 2026 WL 1235068, at *9 ("As the Government has not presented a single reason why Petitioner should be detained—they have not argued nor presented any evidence that he is a danger to the community or a flight risk—and Petitioner has remained free in this country, working, law abiding, and waiting for his June 2027 immigration court hearing, immediate release is the appropriate remedy"); *Rea*, 2026 WL 1959270, at *4 (ordering immediate release where the petitioner was arrested without a warrant and the *Mathews* factors weighed against keeping the petitioner detained).[3]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

---

[3] The Court initially provided Petitioner with seven days to file a reply after receiving Respondents' answer. *See* Dkt. No. 2. However, because the Court has granted Petitioner the requested relief, it does not find a reply is necessary where his immediate release will be effectuated sooner without the reply.

**ORDERS** that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and the Court further

**ORDERS** that Petitioner be released from custody no later than Wednesday, August 12, 2026, at 12:00 P.M.; and the Court further

**ORDERS** that Respondents certify compliance with the Court's order regarding Petitioner's release no later than Wednesday, August 12, 2026, at 5:00 P.M.; and the Court further

**ORDERS** that, having considered the particular circumstances of this case and *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner shall not be re-detained without adequate notice to Petitioner and without an opportunity to be heard at a hearing where the Government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a) and the burden to demonstrate by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Petitioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 11, 2026
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

11